The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>August 15, 2023</u>

**No. A-1-CA-40263**

**BLAIR BATTISHILL,**

Plaintiff/Counterdefendant-Appellant,

v.

**PHILLIP INGRAM,**

Defendant/Counterplaintiff-Appellee.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Lee A. Kirksey, District Court Judge**

Fargason, Booth, St. Clair, Richards & Wilkins, LLP
Damon Richards
Lubbock, TX

Gary C. Mitchell, LLC
Gary C. Mitchell
Ruidoso, NM

for Appellant

Kraft Law LLP
Richard L. Kraft
Roswell, NM

for Appellee

## OPINION

**BOGARDUS, Judge.**

{1}     Plaintiff Blair Battishill appeals the district court's grant of summary judgment in favor of Defendant Philip Ingram. The district court granted Defendant's motion pursuant to *Merrill v. Davis*, 1983-NMSC-070, ¶¶ 6-9, 100 N.M. 552, 673 P.2d 1285, where our Supreme Court held that unmarried, cohabiting adults cannot enter into an implied agreement to pool earnings and share accumulations acquired during cohabitation. Plaintiff argues that the district court "immediately viewed this case [as] a common law marriage matter . . . rather than [considering] the business arrangements of the parties" and therefore erred in failing to consider "the substantive law governing each [sic] cause of action." We affirm summary judgment for all claims except unjust enrichment, which we reverse in part.

## BACKGROUND

{2}     The parties lived together as an unmarried couple from 2005 to 2015. Defendant financially provided for the parties, and Plaintiff performed homemaking services such as cleaning, cooking, and caring for Defendant's two children. In 2012, Defendant left his job and formed Ingram Professional Services, Inc. and IPS Energy (collectively, IPS). The parties provide contradicting accounts regarding Plaintiff's role in starting IPS. Plaintiff claims that the parties agreed to start the business

together, and that, in exchange for half-ownership of IPS, she performed administrative duties and provided homemaking services for Defendant. Defendant denies that the parties agreed to share ownership of the business, characterizes Plaintiff's contributions to IPS as "minimal actions," and asserts that Plaintiff was only an IPS employee for less than a year. Plaintiff received compensation from IPS in 2014 and 2015. The parties separated in late 2015, and Plaintiff filed suit against Defendant for breach of contract, unjust enrichment, promissory estoppel, common law fraud, constructive fraud, conversion, negligent representation, breach of implied covenant of good faith and fair dealing, and prima facie tort. Defendant filed a motion for summary judgment. At the motion hearing, the district court orally granted Defendant's motion for summary judgment, ruling that Plaintiff failed to provide material issues of fact pursuant to *Merrill*, 1983-NMSC-070, ¶¶ 6-9. Plaintiff appeals the district court's grant of summary judgment.[1]

---

[1]Plaintiff presents three additional unavailing issues on appeal. First, Plaintiff contends that the district court erred in allowing the parties to testify at a hearing on a motion to compel. Plaintiff cites no authority to support her argument. Thus, we do not review it. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal."). Second, Plaintiff argues for the case to be certified to our Supreme Court because the district court treated her as a member of a suspect class by denying trial. Third, Plaintiff "seeks reversal of the [o]rder denying her [m]otion to [r]econsider" a motion to compel. Plaintiff fails to develop arguments regarding these issues and therefore we do not consider them. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (explaining that the appellate courts do not review unclear or undeveloped arguments).

2

**DISCUSSION**

{3}     This case requires us to consider the application of *Merrill*, 1983-NMSC-070, ¶¶ 6-9, to civil claims between unmarried cohabitants disputing ownership of a business. In *Merrill*, our Supreme Court clarified that the prohibition against common-law marriage preempts unmarried cohabitants from entering into an implied agreement to jointly own property. *Id.* The parties in *Merrill* lived together unmarried for approximately five years. *Id.* ¶ 2. During this period, the petitioner purchased and managed a business, and invested $18,000 toward the construction of a house on land that the parties owned as tenants in common. *See id.* ¶¶ 3-4. After the parties separated, the respondent filed suit and argued that the parties' conduct created "an implied agreement to pool earnings and share accumulations acquired during cohabitation." *Id.* ¶ 5. Therefore, the respondent concluded, she owned one-half property interest in the business and the co-owned land should be void of an $18,000 property lien. *Id.* Our Supreme Court rejected the respondent's conclusion, holding that an implied agreement does not grant the respondent an interest in the property. *Id.* ¶ 6. The Court reasoned that allowing a party to gain property rights by the "implications that flow from cohabitation" would circumvent New Mexico's prohibition against common-law marriage. *Id.* ¶ 9. Accordingly, *Merrill* stands for the proposition that unmarried cohabitants must enter into an express agreement to jointly own property. *See id.*

## I. Standard of Review

{4} We review summary judgment de novo. *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 8, 139 N.M. 12, 127 P.3d 548. "[S]ummary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Guest v. Berardinelli*, 2008-NMCA-144, ¶ 6, 145 N.M. 186, 195 P.3d 353 (quoting Rule 1-056(C) NMRA). "In determining which issues of fact are material facts for purposes of Rule 1-056(C), we look to the substantive law governing the dispute." *Farmington Police Officers Ass'n Commc'n Workers of Am. Local 7911 v. City of Farmington*, 2006-NMCA-077, ¶ 17, 139 N.M. 750, 137 P.3d 1204. Thus, we examine the substantive law of Plaintiff's claims to determine whether she provides reasonable factual inferences to justify a trial on the issues. *See Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280 (explaining that the party opposing the summary judgment motion must adduce evidence that results in reasonable inferences that justify a trial on the issues).

## II. Breach of Contract

{5} Plaintiff argues that the district court erred in granting summary judgment on her breach of contract claim because the parties presented conflicting evidence regarding the existence of the contract, and therefore New Mexico law requires a

4

jury to determine whether a contract existed. Defendant responds that "[i]t is undisputed that there was never any written contract," that "there is no evidence of a verbal contract between the parties," and, therefore, "[n]o fact issue exists to submit the issue of a contract to a jury." We agree with Defendant and explain.

{6}     "For a contract to be legally valid and enforceable, it must be factually supported by an offer, an acceptance, consideration, and mutual assent." *Flemma v. Halliburton Energy Sers., Inc.*, 2013-NMSC-022, ¶ 28, 303 P.3d 814 (internal quotation marks and citation omitted). "When the existence of a contract is at issue and the evidence is conflicting or permits more than one inference, it is for the finder of fact to determine whether the contract did in fact exist." *Talbott v. Roswell Hosp. Corp.*, 2005-NMCA-109, ¶ 12, 138 N.M. 189, 118 P.3d 194 (alteration, internal quotation marks, and citation omitted). Cohabitating adults are "as competent as any other persons to contract"; however, they are required to enter into an express contract to jointly own property. *Dominguez v. Cruz*, 1980-NMCA-132, ¶ 4, 95 N.M. 1, 617 P.2d 1322; *see Merrill*, 1983-NMSC-070, ¶¶ 6-9.

{7}     Pursuant to *Merrill*, Plaintiff had the burden to provide evidence resulting in reasonable inferences that the parties entered into an *express* agreement to share ownership of the business. *See Romero*, 2010-NMSC-035, ¶ 10. Plaintiff, however, only presents evidence that supports an inference that the parties may have entered into an *implied* agreement. *See Orion Tech. Res., LLC v. Los Alamos Nat'l Sec., LLC*,

2012-NMCA-097, ¶ 9, 287 P.3d 967 (providing that the difference between an express and implied contract is that in an implied contract, the meeting of minds is inferred from the conduct of the parties rather than an express oral or written mutual assent). This evidence includes assertions that Plaintiff performed administrative services for IPS and that the parties worked "toward being successful by pooling [their] resources." Plaintiff also points to romantic statements made by Defendant such as Defendant promising to take care of her for "the rest of [her] life" and the parties agreeing that "what was his was [hers] and what was [hers] was his."

{8}      Noticeably absent is any evidence that could lead to the reasonable inference that there was an offer, an acceptance, or mutual assent to share ownership of IPS expressed in an oral or written manner. *See id.* To the contrary, Plaintiff fails to present evidence that she had any property rights to IPS; all IPS assets are titled exclusively in Defendant's name, and Defendant raised all initial capital to start the business.

{9}      Furthermore, Plaintiff's statements asserting that the parties were equal partners in IPS are insufficient to overcome summary judgment. Plaintiff claims that the parties "decided to start the business together" and that they "are 50/50 partners in IPS." These statements, however, are merely general assertions that a contract existed. This Court has established that "[g]eneral assertions of the existence of a triable issue are insufficient to overcome summary judgment on appeal." *Guest*,

2008-NMCA-144, ¶ 35. Plaintiff must provide evidence explaining why summary judgment was improper beyond her general version of the facts. *See id.* (explaining that the nonmoving party failed to survive summary judgment because they provided their version of the facts without explaining why summary judgment was improper). Here, Plaintiff fails to do so, and argues that she presents "at a minimum an inference that a contract was entered into and existed." An inference based on the parties' conduct that a contract existed, however, is an implied contract, *see Orion Tech. Res., LLC*, 2012-NMCA-097, ¶ 9, which is insufficient to raise a genuine issue of fact regarding whether two cohabitating parties entered an agreement to jointly own property, *see Merrill*, 1983-NMSC-070, ¶¶ 6-9. Therefore, Plaintiff is entitled to a judgment as a matter of law and the district court did not err in granting summary judgment in the breach of contract claim.

**III.    Unjust Enrichment**

{10}    To establish unjust enrichment, Plaintiff must demonstrate a genuine issue of fact regarding whether Defendant knowingly benefitted at Plaintiff's expense in such a manner that allowing Defendant to retain the benefit would be unjust. *See Ontiveros Insulation Co. v. Sanchez*, 2000-NMCA-051, ¶ 11, 129 N.M. 200, 3 P.3d 695. Unjust enrichment "provide[s] relief where, in the absence of privity, a party cannot claim relief in contract and instead must seek refuge in equity." *Id.* Plaintiff argues that Defendant knowingly benefitted from Plaintiff's professional services

7

for IPS and the homemaking services she performed while Defendant expanded IPS. Defendant responds that no issue of fact exists because the district court determined that this was a domestic relationship and not a business relationship. We agree with Plaintiff in part and Defendant in part.

{11} Plaintiff presents evidence that creates an issue of fact regarding the professional benefits she provided to Defendant. Plaintiff argues that she worked at IPS from 2012 to 2014, but received compensation for only ten months. In Plaintiff's affidavit, she asserts that she started performing services for IPS at the moment of its incorporation. The record contains text messages and deposition transcripts indicating that Plaintiff performed services for IPS until 2015. This includes deposition statements confirming that Plaintiff would bind IPS to vehicle insurance policies "back in 2014 and [20]15." Further deposition statements maintain that Plaintiff trained an employee regarding IPS invoicing in 2015, leading to a reasonable inference that Plaintiff had performed the service up to that point. *See Romero*, 2010-NMSC-035, ¶ 10. Moreover, evidence suggests that Plaintiff only received compensation for part of 2014 and 2015, which supports her contention that she "work[ed] at IPS without compensation for at least two years." Consequently, we conclude that Plaintiff presented sufficient evidence to allow reasonable minds to differ on whether Defendant received unjust benefits from Plaintiff's professional services.

{12}     Next, we consider Plaintiff's argument that Defendant unjustly benefitted from her homemaking services. We recognize that the value provided by homemaking efforts must be considered when cohabitating parties enter an express agreement for mutual support, joint purchase of personal property, and distribution of incomes. *See Dominguez*, 1980-NMCA-132, ¶ 4 (establishing that unmarried, cohabitating parties can enter into an oral agreement for mutual support, joint purchase of personal property, and distribution of incomes). As we explained above, however, summary judgment was properly granted on the issue of an express agreement. Accordingly, we must consider whether a party can bring a claim for unjust enrichment based on homemaking services provided to a cohabitating partner if the parties did not enter an express agreement to pool earnings and share accumulations.

{13}     Generally, a party may invoke unjust enrichment as an equitable claim in the absence of a contract. *See Ontiveros Insulation Co.*, 2000-NMCA-051, ¶ 11; *see also Arena Res., Inc. v. Obo, Inc.*, 2010-NMCA-061, ¶ 14, 148 N.M. 483, 238 P.3d 357 (explaining that unjust enrichment is an "implied obligation[] where, on the basis of justice and equity, the law will impose a contractual relationship between parties, regardless of their assent thereto" (emphasis, internal quotation marks, and citation omitted)). In *Merrill*, 1983-NMSC-070, ¶ 9, our Supreme Court rejected an implied obligation for cohabiting, unmarried individuals to jointly own property. As the

*Merrill* Court stated, "If we were to say that the same rights that cannot be gained by common-law marriage may be gained by the implications that flow from cohabitation, then we have circumvented the prohibition of common-law marriage." *Id.* We similarly refuse to circumvent the prohibition of common-law marriage by allowing a claim for unjust enrichment based on implied obligations.

{14}     As a result, we reverse and remand Plaintiff's claim for unjust enrichment based solely on any uncompensated administrative services Plaintiff provided to IPS between 2012 and 2015.

## IV.     Promissory Estoppel

{15}     Plaintiff argues that the district court inappropriately granted summary judgment on her promissory estoppel claim because "[t]he reasonable inferences and material facts are that [Defendant] made a promise to start a business together and share ownership 50/50," and that Plaintiff performed professional and homemaking services in reliance of that promise. "[T]he essential elements of promissory estoppel are: (1) [a]n actual promise must have been made which in fact induced the promisee's action or forbearance; (2) [t]he promisee's reliance on the promise must have been reasonable; (3) [t]he promisee's action or forbearance must have amounted to a substantial change in position; (4) [t]he promisee's action or forbearance must have been actually foreseen or reasonably foreseeable to the promisor when making the promise; and (5) enforcement of the promise is required

to prevent injustice." *Strata Prod. Co. v. Mercury Expl. Co.*, 1996-NMSC-016, ¶ 20, 121 N.M. 622, 916 P.2d 822.

{16} Plaintiff relies on the homemaking services she provided as evidence that leads to the reasonable inference that Defendant made a promise to share ownership of IPS. Homemaking services provided in the context of the romantic relationship, however, do not lead to a reasonable inference that Defendant promised half ownership of IPS. *See Romero*, 2010-NMSC-035, ¶ 10 (asserting that the party opposing summary judgment "may not simply argue that such evidentiary facts might exist, nor may it rest upon the allegations of the complaint" (alteration, internal quotation marks, and citation omitted)). Plaintiff fails to present any further evidence that would raise a question of fact as to whether Defendant promised half ownership of IPS.[2]

{17} Furthermore, relief is inappropriate under principles of promissory estoppel where an implied agreement is insufficient to enter into a contract to jointly own property. *Cf. Chavez v. Manville Prods. Corp.*, 1989-NMSC-050, ¶ 15, 108 N.M. 643, 777 P.2d 371 (holding that relief under principles of promissory estoppel is

---

[2] Plaintiff does not argue that Defendant's generic romantic statement constitute evidence that Defendant made a promise to share ownership of IPS, thus we do not consider the argument. S*ee Pirtle v. Legis. Council Comm'n. of N.M. Legislature*, 2021-NMSC-026, ¶ 58, 492 P.3d 586 ("As a general rule, appellate courts rely on adversarial briefing to decide legal issues and avoid reaching out to construct legal arguments that the parties, intentionally or otherwise, have not presented.").

inappropriate when oral representations are insufficient to amend an express agreement). Allowing Plaintiff to recover half-ownership of Defendant's property based on homemaking services provided in the context of a romantic relationship and on the parties' shared lifestyle would circumvent the prohibition against common law marriage. *See Merrill*, 1983-NMSC-070, ¶ 9.

## V.    Negligent Misrepresentation

{18}    "The law of negligent misrepresentation is governed by negligence principles. Thus, the person providing the information must have a duty to provide the information, and the person relying on it must have a right to do so." *Nance v. L.J. Dolloff Assocs., Inc.*, 2006-NMCA-012, ¶ 15, 138 N.M. 851, 126 P.3d 1215. For Plaintiff's negligent representation claim to survive a motion for summary judgment, Plaintiff must raise issues of fact regarding: "(1) [D]efendant made a material representation to [P]laintiff, (2) [P]laintiff relied upon the representation, (3) [D]efendant knew the representation was false or made it recklessly, and (4) [D]efendant intended to induce reliance by [P]laintiff." *Robey v. Parnell*, 2017-NMCA-038, ¶ 31, 392 P.3d 642.

{19}    Plaintiff fails to present a genuine issue of material fact as to the first, third, and fourth elements of her claim. Plaintiff asserts that Defendant's statement that the parties "would start the business together and own it 50/50," and the generic romantic statements he made in the context of their relationship create an issue of

12

fact sufficient to support a negligent misrepresentation claim. Plaintiff argues that Defendant knew that his representations to Plaintiff were false or made them recklessly and that Defendant "owed a duty to disclose the truth to [Plaintiff]." As previously discussed, however, Plaintiff fails to provide any evidence that Defendant made an express representation to Plaintiff that the parties jointly own IPS. Plaintiff's affidavit only includes conclusory statements and generic romantic statements. Conclusory statements are insufficient to survive summary judgment, *see Guest*, 2008-NMCA-144, ¶ 35, and romantic statements made between cohabitating parties cannot provide the same rights that cannot be gained by common-law marriage, *see Merrill*, 1983-NMSC-070, ¶¶ 6-9. Therefore, we conclude that Plaintiff provides no evidence that would lead to a reasonable inference that Defendant knew any representation made was false or made recklessly, or that Defendant intended reliance by Plaintiff.

## VI.   Common Law Fraud

{20}   "The elements of common-law fraud are: ([1]) a misrepresentation of fact, ([2]) known by the maker to be false, ([3]) made with the intent to deceive and to induce the other party to act in reliance, and ([4]) actually relied on by the other party to his or her detriment." *Lotspeich v. Golden Oil Co.*, ¶ 9, 1998-NMCA-101, 125 N.M. 365, 961 P.2d 790 (internal quotation marks and citation omitted). Similar to the negligent misrepresentation analysis, Plaintiff fails to provide any evidence that

Defendant made a representation that he knew to be false with the intent to deceive and to induce her to act in reliance. Defendant's romantic statements coupled with Plaintiff's administrative and homemaking services are insufficient for a reasonable reliance that Defendant knowingly made a false representation to induce Plaintiff to perform the services. *See Romero*, 2010-NMSC-035, ¶ 10.

## VII. Constructive Fraud

{21} "Constructive fraud is a breach of a legal or equitable duty irrespective of the moral guilt of the fraud feasor, and it is not necessary that actual dishonesty of purpose nor intent to deceive exist." *Gabriele v. Gabriele*, 2018-NMCA-042, ¶ 13 n.4, 421 P.3d 828 (internal quotation marks and citation omitted). "An action for constructive fraud is maintainable where there is a nondisclosure of material facts and the person charged with the constructive fraud had a duty to speak under existing circumstances." *Barber's Super Mkts., Inc. v. Stryker*, 1972-NMCA-089, ¶ 42, 84 N.M. 181, 500 P.2d 1304.

{22} Plaintiff claims Defendant "had a duty to speak up due to his business association with [Plaintiff], especially considering that they were supposed to be partners in IPS." As discussed above, however, any business association between the parties required an express agreement, *see Merrill*, 1983-NMSC-070, ¶¶ 6-9, and Plaintiff fails to provide any evidence of an express agreement to share ownership of the business. Further, New Mexico courts have established a duty between

spouses as a basis for constructive fraud only when "one spouse receives grossly inadequate consideration for forfeiting his or her interest in community property." *Gabriele*, 2018-NMCA-042, ¶ 13. This duty, however, is based on the fiduciary relationship created by marriage. *Primus v. Clark*, 1944-NMSC-030, ¶¶ 13-15, 48 N.M. 240, 149 P.2d 535. In this case, the parties did not marry, thus, there is no fiduciary relationship. Moreover, Plaintiff fails to cite authority to support any additional duty between the parties. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal."). Accordingly, there is no evidence that Defendant owed Plaintiff a duty to speak under the circumstances.

## VIII. Conversion by Demand and Refusal

{23}     We understand Plaintiff's argument to be that there are material facts that demonstrate she had ownership and right to possession of one-half interest of IPS because she formed a partnership with Defendant. And thus, Plaintiff maintains, Defendant is liable of conversion by demand and refusal because he "engaged in deceptive practices, in order to have the corporation established without granting 50 [percent] of the stock in the corporation to" Plaintiff.

{24}     Conversion is "the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, or acts constituting an

15

unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." *In re Yalkut*, 2008-NMSC-009, ¶ 25, 143 N.M. 387, 176 P.3d 1119 (internal quotation marks and citation omitted). "The elements of the tort of conversion by demand and refusal are: (1) that the plaintiff had the right of possession of personal property; (2) that the plaintiff demanded that the defendant return the property to [the] plaintiff; and (3) that the defendant refused to return the property to [the] plaintiff." *Nosker v. Trinity Land Co.*, 1988-NMCA-035, ¶ 15, 107 N.M. 333, 757 P.2d 803.

{25}     Plaintiff fails to establish a question of material fact regarding her right of possession of personal property. As we have discussed, a partnership between the parties requires an express contract. *See Merrill*, 1983-NMSC-070, ¶¶ 6-9. Plaintiff presents no evidence of such a contract. Moreover, it is undisputed that IPS is titled in Defendant's name. Accordingly, the district court did not err in granting summary judgment on Plaintiff's conversion claim.

**IX.    Prima Facie Tort**

{26}     Plaintiff contends that Defendant "failed to deliver what he promised and represented" and "from his failure to comply with the promises, there is a reasonable inference that he intended to injure" Plaintiff. "The elements of a prima facie tort are (1) an intentional, lawful act, (2) committed with the intent to injure the plaintiff, (3) causing injury to the plaintiff, and (4) the absence of justification for the injurious

16

act." *Vigil v. Pub. Serv. Co. of N.M.*, 2004-NMCA-085, ¶ 10, 136 N.M. 70, 94 P.3d 813 (text only) (citation omitted).

{27}   In this case, the alleged injurious act is Defendant's failure to convey half the interest of IPS to Plaintiff. Plaintiff, however, fails to raise a material issue of fact as to the absence of justification for the alleged injurious act. *Merrill*, 1983-NMSC-070, ¶¶ 6-9, requires the parties to enter into an express agreement to jointly own IPS. Plaintiff fails to provide any evidence that leads to a reasonable inference that the parties entered into the required agreement. *See Romero*, 2010-NMSC-035, ¶ 10. Accordingly, Defendant is justified in not conveying any IPS interest to Plaintiff. Furthermore, as explained above, the unfulfilled romantic statements are insufficient to establish a question of fact regarding an intent to injure the party. Consequently, Plaintiff failed to meet her standard of raising a genuine question of fact as to her prima facie tort claim.

**X.     Covenant of Good Faith and Fair Dealing**

{28}   "The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement." *Ruegsegger v. W. N.M. Univ. Bd. of Regents*, 2007-NMCA-030, ¶ 39, 141 N.M. 306, 154 P.3d 681 (internal quotation marks and citation omitted). The parties' cohabiting romantic relationship requires them to enter into an express agreement to jointly own property. *See Merrill*, 1983-NMSC-

070, ¶¶ 6-9. Plaintiff fails to provide evidence of an express agreement. Therefore, there is no agreement and no implied covenant of good faith and fair dealing. Defendant is entitled to judgment as a matter of law.

**CONCLUSION**

{29}    For the foregoing reasons, we reverse for limited review of Plaintiff's unjust enrichment claim and affirm summary judgment for the rest of the claims.

{30}    **IT IS SO ORDERED.**

_____
**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

_____
**JACQUELINE R. MEDINA, Judge**

_____
**JANE B. YOHALEM, Judge**

18